**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

EDUARDO ALTAMIRO SOARES CAMARGO,

Petitioner, 9:26-cv-02128 (BKS)

v.

Officer in Charge, Wellesley Island Border Patrol Station; DAVID J. VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; and TODD BLANCHE, Attorney General of the United States,

Respondents.

---

**Appearances:**

*Petitioner Pro Se:*
Eduardo Altamiro Soares Camargo
Wellesley Island Customs and Border Patrol Station
45764 Landon Road
Wellesley Island, NY 13640

*For Respondents:*
Alexis M. Osborne
Assistant United States Attorney
445 Broadway, Room 218
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On October 16, 2026, Petitioner Eduardo Altamiro Soares Camargo, who had been arrested and detained by Immigration and Customs Enforcement ("ICE") on October 4, 2026, filed an emergency petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking

immediate release, or, alternatively, a bond hearing. (Dkt. No. 1, ¶ 8). Petitioner claims his arrest and detention violate his Fifth Amendment right to due process, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (C). (*Id.* ¶¶ 28–49).

The day the petition was filed, the Court issued an Order enjoining Respondents from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending[1] and setting a briefing schedule. (Dkt. No. 4). On October 27, 2026, after considering the parties' briefs, (Dkt. Nos. 1, 6, 8), the Court granted the petition, ordered Petitioner's immediate release, and advised the parties that a written decision would follow. (Dkt. No. 9).[2] This is that decision.

## II. BACKGROUND

Petitioner, a citizen and national of Brazil, entered the United States in 2021 "through the U.S.-Mexico border," where he was encountered by "immigration authorities and was released." (Dkt. No. 1, ¶ 1; Dkt. No. 6-1, at 2–3). Since entering the United States, Petitioner has "continuously resided in Pennsylvania," has "no criminal history," and has "always complied with every summons from Immigration Court and ICE." (Dkt. No. 1, ¶ 2). On February 21, 2025, Petitioner "received a removal order." (*Id.* ¶ 4). On March 17, 2025, Petitioner filed an appeal with the Board of Immigration Appeals, which is still pending. (*Id.*).

Although the petition contains few facts, the Court gleans additional background facts from Respondents' submissions. In the "Record of Deportable/Inadmissible Alien," Form I 213,

---

[1] Respondents requested permission to transport Petitioner to the Buffalo Federal Detention Facility, which is located in the Western District of New York, because the Wellesley Island Border Patrol Sation, where Petitioner was being held "is not equipped to house immigration detainees." (Dkt. No. 3, at 1). The Court denied this request, explaining that it appeared from the petition that Petitioner "may be entitled to a bond hearing or immediate release." (Dkt. No. 5).

[2] Petitioner was released the next day. (Dkt. No. 10).

prepared following Petitioner's arrest, Border Patrol Agent Abdrual Duran Garcia states that on October 4, 2026, Border Patrol Agents were "conducting patrol duties in Watertown, NY," when Agent Garcia "encountered a gray SUV with New Jersey plates . . . registered to [Petitioner], an illegal alien from Brazil," whom, Agent Garcia "mistakenly" believed, was subject to a "final order of removal." (Dkt. No. 6-2, at 2–3). The vehicle was "parked in front of the entrance" of a hotel and "unoccupied." (*Id.* at 3). "A few minutes later," Agent Garcia "observed two male subjects approach the driver and passenger sides of the target vehicle." (*Id.*). Agent Garcia was "able to identify an individual matching the appearance of [Petitioner] entering the target vehicle." (*Id.*).

Agent Garcia "initiated a multi-agent vehicle stop using [his] emergency lights and sirens on the subjects in the [hotel] parking lot" and the agents "performed an immigration inspection on all occupants of the vehicle." (*Id.*). During the inspection, Agent Garcia confirmed Petitioner's identity and found through "[f]urther investigation and record checks . . . that [Petitioner] had been issued a final order by an immigration judge, which he failed to execute," and that Petitioner "had no pending court dates besides a pending appeal." (*Id.*). Concluding there was "probable cause to believe [Petitioner] would escape before an administrative warrant could be obtained," Agent Garcia placed Petitioner under arrest. (*Id.* at 4). Petitioner was held at Wellesley Island Customs and Border Patrol Station for the duration of his detention.

On October 16, 2026, Petitioner filed the instant petition. (Dkt. No. 1). Upon its filing, Respondents reviewed "the status of [Petitioner's] February 21, 2025 removal order and learn[ed] that it was not administratively final due to a timely appeal." (Dkt. No. 6, at 2). On October 20, 2026, Customs and Border Protection provided Petitioner with a Notice of Custody Determination, advising that "I have determined that, pending a final administrative

determination in your case, you will be: Detained." (Dkt. No. 6-3, at 1). The Notice contains Petitioner's name and a box is checked indicating that Petitioner requested that "an immigration judge review this custody determination." (*Id.*). However, the Form does not contain Petitioner's signature, does not identify the "Authorized Officer" who made the custody determination or the interpreter who purportedly read the contents of the Notice to Petitioner in Portuguese, and does not contain the Officer or Interpreter's signatures. (*Id.*). Respondents assert a bond hearing was "being scheduled." (Dkt. No. 6, at 4).

As referenced above, on October 27, 2026, the Court issued a Text Order directing Petitioner's immediate release, and on October 28, 2026, Petitioner was released from immigration custody. (Dkt. Nos. 9, 10). The following reflects the Court's reasons for ordering Petitioner's release.

## III. JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## IV. DISCUSSION

### A. Statutory Basis for Detention

When Border Patrol Agents arrested and took Petitioner into custody on October 4, 2026, they did so on the belief that Petitioner was subject to a final order of removal. (Dkt. No. 6-2, at 3). The detention of noncitizens following a final order of removal is governed by 8 U.S.C. §

1231, which provides, in relevant part, that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the 90-day removal period. *Id.* § 1231(a)(2)(A) ("During the removal period, the Attorney General *shall detain* the alien.") (emphasis added); *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) ("After entry of a final removal order and during the 90-day removal period . . . aliens must be held in custody."). However, the 90-day removal period is not triggered until the removal order is administratively final. *See Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018) (discussing the "scenarios that can trigger the start of [Section 1231's] removal period, but only the *latest* of those scenarios is the trigger."). And, in this case, as Respondents concede, Petitioner's order of removal was not final at the time of his arrest because an appeal was pending with the Board of Immigration Appeals. (Dkt. No. 6, at 2); *see* 8 C.F.R. § 1241.1(a) ("An order of removal made by the immigration judge . . . shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals."). Thus, § 1231 is inapplicable.

Petitioner's detention is instead governed by 8 U.S.C. § 1226(a), which governs the arrest and detention of noncitizens pending a removal decision, and is discretionary in nature. *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 73 (2d Cir. 2026) ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission."). While Respondents reserve their right to challenge the applicability of § 1226(a), they "acknowledge that, under the

Second Circuit's decision in *Barbosa da Cunha* . . . Petitioner's present detention is governed by 8 U.S.C. § 1226(a)."[3] (Dkt. No. 6, at 3).

**B. Due Process Required**

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The "essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)).

Habeas review is available to challenge "the lawfulness of detention when it is first imposed" as well as "to challenge whether, at some point, an ongoing detention has become unlawful." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has

[3] The Supreme Court has granted certiorari in *Barbosa da Cunha*, No. 26-104 (U.S. Oct. 1, 2026). The Courts of Appeals are divided. Like the Second Circuit, the First, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits have determined that mandatory detention of similarly-situated petitioners under § 1225(b)(2)(A) is unlawful. *Guerrero Orellana v. Moniz*, 188 F.4th 1, 20 (1st Cir. 2026); *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *7, 2026 U.S. App. LEXIS 26353, at *18 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, No. 25-7044, 2026 WL 2661092, at *20, 2026 U.S. App. LEXIS 27850, at *16 (4th Cir. Sept. 10, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026), *petition for cert. filed*, No. 25-1415 (U.S. June 22, 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 914–15 (7th Cir. 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250–51 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1262 (11th Cir. 2026). The Courts of Appeals for the Fifth and Eighth Circuits have held that § 1225(b)(2)(A) requires mandatory detention of individuals like Petitioner. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026), *petition for cert. filed*, No. 26-43 (U.S. July 2, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026).

been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* at 850 (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

In evaluating procedural due process, courts apply the "three-factor balancing test as provided in *Mathews v. Eldridge*": "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 335).

**1. Petitioner's Private Interest**

"[T]he private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)), and it "cannot be abridged without 'adequate procedural protections,'" *Singh v. Maldonado*, No. 26-cv-00019, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (E.D.N.Y. Jan. 29, 2026) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner has no criminal history and was detained from October 4, 2026 to October 28, 2026, pursuant to the INA's civil detention provisions, and not as a "result of a criminal adjudication." *Velasco Lopez*, 978 F.3d at 851; *see also Zadvydas*, 533 U.S. at 690 (referring to immigration proceedings as "civil, not criminal"). The Court therefore finds the first *Mathews* factor weighs heavily in Petitioner's favor.

### 2. Risk of Erroneous Deprivation and Probable Value of Additional Safeguards

The second *Mathews* factor, "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," also weighs in Petitioner's favor. *Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024). "The only interest to be considered at this part of the *Mathews* analysis is that of the detained individuals—not the government." *Black*, 103 F.4th at 152.

Here, as discussed below, "the procedures underpinning" Petitioner's detention, which are specified in § 1226(a) and its implementing regulations, do not appear to have been followed, thus increasing the risk of erroneous deprivation. *Velasco Lopez*, 978 F.3d at 852; *see also id.* at 850 ("The 'necessary scope' of [due process] review and resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'" (quoting *Boumediene,* 553 U.S. at 781)); *see also Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 316 (E.D.N.Y. 2025) (finding that the "interest in being free from detention is significant even in the context of the Section 1226(a) discretionary scheme.").

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on whether" the noncitizen "is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *5, 2026 U.S. Dist. LEXIS 114149, at *14 (E.D.N.Y. May 22, 2026) ("ICE must obtain a warrant before arresting a noncitizen unless the officer 'has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.'" (quoting 8 U.S.C. § 1357(a)(2)). The regulations implementing § 1226(a) require an officer to make "an individualized determination as to whether detention is appropriate based on two factors—

whether the noncitizen is (1) a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" *Rodriguez-Acurio*, 811 F. Supp. 3d at 316 (quoting 8 C.F.R. § 1236.1(c)(8)). "The noncitizen has an 'opportunity to appeal a detention decision' by the [] officer who conducted this individualized assessment 'to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors.'" *Id.* at 316–17 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025)).

Even if Petitioner's initial arrest and detention was not improper given the Border Patrol Agents' belief, albeit mistaken, that Petitioner's order of removal was final and that he was subject to mandatory detention under 8 U.S.C. § 1231(a)(2)(A), the continuation of Petitioner's detention *after* realizing the mistake raises due process concerns. *See*, *e.g.*, *Oldacre v. Arteta*, No. 26-cv-2672, 2026 WL 1718184, at *2 (S.D.N.Y. June 12, 2026) (finding that because mandatory detention under § 1226(c)(1)(E) no longer applied, the petitioner's "continued mandatory detention under that provision . . . would raise serious due process concerns"). Here, the record indicates that even after realizing § 1231 did not govern Petitioner's detention, Respondents failed to act in accordance with § 1226(a)'s discretionary detention provisions. (Dkt. No. 6, at 2). For example, there is no evidence that Respondents issued a warrant or made an individualized determination regarding Petitioner's continued detention; Respondents provide no explanation why four days passed before Petitioner was notified of the determination that he would remain detained; and, despite Petitioner's October 20, 2026, request for a hearing, no hearing was held prior to his October 28, 2026, Court-ordered release. Further, Petitioner was not committing a crime at the time of his arrest, did not attempt to flee or resist arrest in any manner, and has no criminal history.

Respondents' arguments in support of their assertions that the risk of erroneous deprivation is "low" and additional safeguards are not required, (Dkt. No. 6, at 4), are not persuasive. Respondents assert that Petitioner's detention was not "prolonged" and that he had "been detained only for a matter of hours at the time of filing" of the petition. (*Id.*). This is factually incorrect: Petitioner was detained on October 4, 2026, and filed the Petition on October 16, 2026. (Dkt. No. 1). Respondents further assert that that Petitioner received a Notice to Appear, a Notice of Custody Determination, and "has secured access to a bond hearing." (Dkt. No. 6, at 4). However, Respondents do not explain why receipt of a Notice to Appear—the document that commences removal proceedings, *see Ozturk v. Hyde*, 136 F.4th 382, 398 (2d Cir. 2025) ("Filing a Notice to Appear ('NTA') in an immigration court is the action that commences removal proceedings." (citing 8 U.S.C. § 1229(a); 8 C.F.R. § 1239.1))—would provide a procedural safeguard or reduce the risk of erroneous deprivation of liberty to a noncitizen who *has already been ordered removed*. In addition, there is no evidence that a Notice to Appear was given to Petitioner. Although Petitioner has not disputed receiving a Notice of Custody Determination, the Court notes that it does not identify any issuing officer, the purported interpreter, and is not signed by anyone. (Dkt. No. 6-3). And as to Respondents' assertion that, at most, "any relief should be limited to a prompt, individualized bond hearing," (Dkt. No. 6, at 4), the Court finds such a hearing insufficient to reduce the risk of erroneous deprivation or to safeguard Petitioner's liberty interest, where, as here, Petitioner has been detained without any individualized determination whatsoever. *Lopez Benitez*, 795 F. Supp. 3d at 495 ("The purpose of requiring an exercise of discretion [under Section 1226 (a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty."); *see also Inestroza Carbajal v. Frazier*, No. 26-cv-2778, 2026 WL 1309265, at *3,

2026 U.S. Dist. LEXIS 104984, at *10 (E.D.N.Y. May 12, 2026) ("Without any notice or opportunity to be heard, including an individualized assessment as to flight or public safety risk at the outset, an after-the-fact custody determination at an arbitrary point in time, after the deprivation has already occurred, violates due process."). The Court therefore finds a high risk of erroneous deprivation of Petitioner's liberty and that a bond hearing, in this case, is an insufficient safeguards.

**3. Government's Interest**

Finally, the Court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "'[I]n striking the appropriate due process balance the final factor to be assessed is the public interest,'" which "include 'the administrative burden and other societal costs that would be associated with' the additional process." *Velasco Lopez*, 978 F.3d at 855 (quoting *Mathews*, 424 U.S. at 347). Respondents vaguely argue that "the Government has a significant interest in administering the § 1226(a) custody-review process as Congress designed and avoiding duplicative proceedings." (Dkt. No. 6, at 4). It is well-established that "'the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose,'" and that "[t]he Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690).

But absent evidence of an individualized determination regarding Petitioner's dangerousness or flight risk, and absent evidence of any criminal history, danger to the community, or flight risk the Court finds the Government's interest minimal in this case. *See*

*Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569, at *7, 2026 U.S. Dist. LEXIS 1766, at *20 (E.D.N.Y. Jan. 6, 2026) (granting release where the petitioner, who had no prior contact with immigration, was stopped by ICE officers who were searching for someone else, and summarily arrested and detained, explaining that "the government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances"). Having found that the Government's interest in continuing to detain Petitioner without an individualized determination is minimal and that the Petitioner's interest in his liberty and the risk of erroneous deprivation are great, the Court concludes that Petitioner's right to procedural due process was violated and that release is the appropriate remedy in this case.[4]

## V. CONCLUSION

Accordingly, it is

**ORDERED** that the Petition for a writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that pending the issuance of any final removal order against Petitioner, Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case; and it is further

[4] Because the Court has found Petitioner's detention violates his due process rights and has ordered his release, the Court need not reach the other claims in his petition.

**ORDERED** that the Clerk of the Court serve this Memorandum-Decision and Order in accordance with the Local Rules, and, in view of Petitioner's pro se status, send a copy to the address on the envelope in which the petition was sent, (Dkt. No. 1, at 18).

**IT IS SO ORDERED.**

Dated: November 2, 2026
Syracuse, New York

Brenda K. Sannes
Brenda K. Sannes
Chief U.S. District Judge